LORETTA ALLEN, ADMINISTRATRIX AD PROSEQUENDUM, PLAINTIFF-RESPONDENT, v. FREDERIC TATUM ET AL., DEFENDANTS-APPELLANTS.

Submitted January 27, 1933—Decided July 15, 1933.

Before Justices BODINE and DONGES.

For the appellants, *Durand, Ivins & Carton.*

For the respondent, *Quinn, Parsons & Doremus.*

PER CURIAM.

This is an appeal from a judgment of the Monmouth County Court of Common Pleas entered upon the verdict of a jury after a trial before Judge Truax. There was a rule to show

cause on the ground of the excessiveness of the verdict, which rule reserved exceptions and was subsequently discharged.

Plaintiff's decedent, who was her son, was killed as the result of a collision between an automobile driven by him and owned by plaintiff, and a car owned by the defendant Tatum and driven by the defendant Falaradeu.

Decedent was operating the Ford car on a state highway near Middletown, New Jersey. While ascending a long hill, the car ran out of gasoline and stopped about five hundred feet from the top. Decedent alighted and attempted to turn the car around by pushing it downhill backwards and turning the wheel. In this manner he got his car across the road and partly on that side of the road ordinarily used by south-bound traffic. The accident occurred at five-thirty P. M. on October 28th, 1931. Defendant's car came over the brow of the hill, attempted to pass to the rear of the Ford, struck decedent and his car, killing the decedent. There were two passengers in the Ford who testified for the plaintiff to the above facts. It appeared that Falaradeu was blind in his right eye. Falaradeu testified that when he first saw the Ford he was three hundred feet away and its lights were on bright. He was going twenty-five or thirty miles an hour and could see decedent starting to push the Ford backwards. He slowed up to twenty miles an hour. His testimony is rather confusing and at one point he says he feared a collision when four or five hundred feet away but could not stop despite the fact that his brakes were good and had recently been re-lined. Then he said he apprehended danger when three hundred feet away; next shortened it to one hundred to one hundred and twenty-five feet; then to twenty-five feet, at which point he applied his brakes but could not stop although by this time he said he was going only ten miles an hour.

Plaintiff offered testimony to the effect that the Ford was only three feet over the center of the road and that there was a space of twenty-one feet in the rear of it for a car to pass.

1 and 2. The first two points argued concern questions permitted to be asked an actuary over objection of defendants. These questions were:

"*Q*. At the age of nineteen years what is the expectation of living according to the accepted tables of mortality?"

"*Q*. What capital sum would have to be invested at four per cent. interest to provide weekly payments of a nominal sum of $10 for forty-three years, the fund being extinguished at the end of that time?"

The basis of the objection is that such questions rely upon and presented to the jury the situation that the decedent would be legally required to contribute money to his mother for the rest of their joint lives. However, the judge charged the jury to the contrary, and merely told them they might consider this testimony. He said, "also, ladies and gentlemen, it seems to me as reasonable men and women you would consider whether or not the boy would continue to keep up that obligation all his life. We are dealing with probabilities and uncertainties."

3. Upon cross-examination, a witness for plaintiff, being asked why he had made a certain statement previously, replied, "just to get rid of the insurance man, I guess." Thereupon, motion was made for a mistrial and the denial of this motion is alleged now to be error. This is a matter of discretion and there is nothing to indicate abuse of that discretion. The plaintiff had nothing to do with eliciting the mention of insurance and made no attempt to benefit by it. Furthermore, the trial court charged the jury to disregard any such reference. There was no error in this ruling.

4. That it was eror to refuse to direct a verdict for defendants. The motion was upon the ground of lack of proof of negligence and the display of contributory. negligence by decedent as a matter of law. The recital of facts above is sufficient to indicate that both of these questions were for the jury. The testimony of Falaradeu alone could be said to raise inference of his negligence, and if the testimony of plaintiff's witnesses to the effect that the rear of the Ford projected only three feet over the center of the road be true, then surely the negligence. of decedent did not appear as a matter of law.

5. The next point is that the court erred in charging the jury that "the law does say that there is an obligation on the

part of the child to support the parents when they are in necessitous circumstances." The court charged that the parents were not entitled to any earnings of a child after majority, and then went on to state that when the parents were a charge upon the state the overseer of the poor can compel support from the children. This is true, although probably immaterial to this case. However, it was harmless because the court mentioned this merely as a matter of exposition and did not charge the jury they should return a verdict on any such basis. The question submitted to the jury was the amount the mother was entitled to before decedent reached his majority, and the amount the son would probably contribute thereafter.

6. This point challenges a long excerpt from the charge wherein the court commented upon the evidence of the insurance actuary. The complaint appears to be that commenting upon this evidence and not upon other elements properly to be considered on the question of damages, placed undue emphasis upon the figures of the actuary. A reading of the excerpt leads to the opposite conclusion and to the belief that the court was trying to lessen the weight and importance of this testimony. In effect he told the jury that any guess they might make would, in his opinion, be as accurate as he figures of the actuary. There was no harmful error in the portion of the charge complained of.

7. That the court erred in charging: "And I apprehend that in discussing this case if a man saw a woman with a baby carriage standing in the middle of the road and did not stop because he had a right to run forty miles an hour would not necessarily mean he could go right on ahead. He must show common sense and drive as he should under the circumstances in which he found himself."

These words were used by way of illustrating the effect of the motor vehicle law. What the court was saying was that a driver does not have the absolute right to go the limit speed permitted by law under all circumstances, but must observe conditions and use reasonable care. It was purely an illustration and the court did not charge any direct application to this case, nor could the jury infer that defendant Falaradeu

was under the same duty as a man who approached a baby carriage at forty miles an hour. It does not seem to be a situation where a principle of law, correct in itself but inapplicable to the facts of the case, was charged as being controlling, such as was condemned in *Lambert* v. *Trenton, &c., Traction Co.,* 3 *N. J. Mis. R.* 237; 127 *Atl. Rep.* 674.

The judgment is affirmed, with costs.